(No. 44199.—
No. 44308.—
No. 44432.—

LAKE SHORE AUTO PARTS CO. *et al.,* Appellees, *vs.* BERNARD J. KORZEN, County Treasurer and *ex officio* County Collector of Cook County, *et al.,* Appellants.—EUGENE S. MAYNARD *et al.,* Petitioners, *vs.* EDWARD J. BARRETT, County Clerk of Cook County, *et al.,* Defendants.— CLEMENS K. SHAPIRO *et al.,* Appellants, *vs.* EDWARD J. BARRETT, County Clerk of Cook County, *et al.,* Appellees.

*Opinion filed July 9, 1971.—Rehearing denied August 24, 1971.*

138

Davis, J., dissenting.

Wᴵᴸᴸᴵᴬᴹ J. Sᴄᴏᴛᴛ, Attorney General, and Eᴅᴡᴬᴿᴰ V. Hᴬɴʀᴬʜᴬɴ, State's Attorney, both of Chicago, (Fʀᴬɴᴄɪѕ T. Cʀᴏᴡᴇ, Cᴬʟᴠɪɴ C. Cᴬᴹᴘʙᴇʟʟ, and Mᴏʀʀɪѕ S. Bʀᴏᴍ-ʙᴇʀɢ, Assistant Attorneys General, and Aᴜʙʀᴇʏ F. Kᴀᴘʟᴀɴ, Assistant State's Attorney, of counsel,) for appellants.

Oʀʟɪᴋᴏғғ, Pʀɪɴѕ, Fʟᴬᴍᴍ & Sᴜѕᴍᴀɴ, of Chicago, for appellees.

Sᴀᴍᴜᴇʟ W. Wɪᴛᴡᴇʀ, of Chicago, for petitioners.

Eᴅᴡᴬᴿᴰ V. Hᴬɴʀᴬʜᴬɴ, State's Attorney, of Chicago, (Aᴜʙʀᴇʏ F. Kᴀᴘʟᴀɴ, Assistant State's Attorney, of coun-sel,) for defendants.

SCHLIFKIN & BERMAN, of Chicago, for appellants.

EDWARD V. HANRAHAN, State's Attorney, of Chicago, (AUBREY F. KAPLAN, Assistant State's Attorney, of counsel,) for appellees.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

These consolidated cases present issues concerning the construction and the validity of article IX-A which was added to the constitution of 1870 by referendum vote at the November 1970 election. On June 30, 1969, the Senate and the House of Representatives concurred in the adoption of Senate Joint Resolution No. 30, which provided for the submission of the proposed amendment to a referendum vote. Senate Joint Resolution No. 30 (Senate Journal, June 30, 1969, p. 3476) is as follows:

"SENATE JOINT RESOLUTION NO. 30

*Resolved, By the Senate of the Seventy-sixth General Assembly of the State of Illinois, the House of Representatives concurring herein,* that there shall be submitted to the electors of the state for adoption or rejection at the next election of members of the General Assembly of the State of Illinois, in the manner provided by law, a proposition to add Article IX-A to the Constitution, the added Article to read as follows:

ARTICLE IX-A

Section 1. Notwithstanding any other provision of this Constitution, the taxation of personal property by valuation is prohibited *as to individuals.*

SCHEDULE

Paragraph 1. This amendment shall become effective January 1, 1971."

The explanation of the amendment which appeared upon the referendum ballot is as follows:

"The amendment would abolish the personal property tax by valuation levied against individuals. It would not affect the same tax levied against corporations and other entities not considered in law to be individuals. The amendment would achieve this result by adding a new article to the Constitution of 1870, Article IX-A, thus setting aside existing provisions in Article IX, section 1, that require the taxation by valuation of all forms of property, real and personal or other, owned by individuals and corporations."

Subsequently, on May 19, 1970, the Senate adopted Senate Joint Resolution No. 67 (Senate Journal May 19, 1970, p. 6), which contained a further statement of the intention of the General Assembly in adopting Senate Joint Resolution No. 30. Senate Joint Resolution No. 67 was concurred in by the House of Representatives on May 29, 1970 (Senate Journal, May 29, 1970, p. 149). It reads as follows:

"SENATE JOINT RESOLUTION NO. 67

*RESOLVED, BY THE SENATE OF THE SEVENTY-SIXTH GENERAL ASSEMBLY OF THE STATE OF ILLINOIS, THE HOUSE OF REPRESENTATIVES CONCURRING HEREIN,* that, in adopting Senate Joint Resolution No. 30, which submits to the electors of this State a constitutional amendment prohibiting the taxation of personal property by valuation as to individuals, it was the intention of this General Assembly to abolish the ad valorem taxation of personal property owned by a natural person or by two or more natural persons, and that, by the use of the phrase 'as to individuals', this General Assembly intended to mean a natural person, or two or more natural persons as joint tenants or tenants in common."

The first of the three consolidated actions that are before us was filed by Lake Shore Auto Parts Co., a corporation, on December 9, 1970. The complaint named as defendants the county clerk of Cook County, the county assessor, the

county collector and the members of the board of appeals of that county, as well as the director of the Department of Local Government Affairs of the State. It alleged that it was filed as a class action on behalf of the plaintiff (hereafter Lake Shore) and on behalf of all other corporations and other "non-individuals" subject to personal property tax. It asserted that the new article IX-A violates the fourteenth amendment to the constitution of the United States because its effect "is to exonerate from ad valorem personal property taxation on and after January 1, 1971, all personal property owned by 'individuals', while authorizing and requiring the continued ad valorem taxation of all personal property owned by entities other than 'individuals'." It also alleged that the provisions of article IX-A immediately became a part of and amended the Revenue Act of 1939, so that that statute "imposes ad valorem taxes only with respect to personal property owned by corporations and other entities which are not 'individuals' within the meaning of said Article IX-A." The complaint prayed for a decree "finding and declaring that the provisions of the Revenue Act of 1939 * * *, as amended by Article IX-A of the Constitution of Illinois, are unconstitutional, invalid and unenforceable insofar and to the extent that such statute purports to impose ad valorem taxes with respect to personal property owned by plaintiff and all corporations and other 'non-individuals' who are members of the class which plaintiff represents." An injunction, as well as relief appropriate to a class action, was also sought.

The answers of the defendants denied the legal conclusions asserted by the plaintiff. They did not admit the allegations that related to the representative character of the action, but they did not dispute any allegations of fact that related to the basic issues.

All parties moved for summary judgment, and the trial court entered an order on March 20, 1971, granting the basic relief prayed for in the complaint, but reserving juris-

diction to determine the class aspect of the action. The order also found that article IX-A is not applicable to personal property taxes the assessment of which was commenced prior to January 1, 1971. The defendant, Robert J. Lehnhausen, Director of the Department of Local Government Affairs of the State of Illinois, has appealed, and the plaintiff has cross-appealed from that portion of the order that related to the particular taxes to which the court's order was applicable.

A petition seeking leave to file an original action in this court was filed on May 10, 1971, on behalf of Eugene L. Maynard, "a natural person, citizen and taxpayer of the State of Illinois," and also on behalf of one high school district and three grade school districts. Leave to file was granted on May 12, 1971. The defendants are those State and county officers who are defendants in the Lake Shore case. The complaint, which sought a declaratory judgment and other relief, alleges the adoption of article IX-A. It is suggested that "the *Lake Shore* case will come to the Court in a flawed condition in that it will not properly present the parties and arguments essential for a full determination of the important revenue question. * * * Without the presence of Eugene L. Maynard, neither the presence nor the position of a natural person will be adequately presented to this Court." The complaint alleged that it was filed by Maynard, who is alleged to own non-business personal property, on behalf of himself and all others similarly situated. It also alleged that it was filed on behalf of the named public bodies for themselves and all other public bodies which receive proceeds from personal property taxation.

The deficiencies in parties and in legal arguments in the Lake Shore case is said to lie in the fact that the only plaintiff in that case is a corporation, and in the fact that the complaint in that case does not contain a direct request for a declaration of the unconstitutionality of article IX-A.

"The pleadings of that case place into question only certain sections of the Illinois Revenue Act. The attack is made upon these sections as affected by the passage of Article IX-A rather than upon the constitutionality of the Article itself. * * * If the Court considers the *Lake Shore* case without additional parties and arguments, it may be foreclosed from ruling on the central issue of constitutionality of the Amendment."

No new facts were alleged in the Maynard case, and the defendant Lehnhausen has conceded the factual questions and filed a brief to stand as his answer in this case. The brief on behalf of the defendant county officers appears similarly to have been intended to stand as a motion to dismiss the complaint.

Another action was instituted by a complaint for declaratory judgment which was filed in the circuit court of Cook County on May 8, 1971, on behalf of several plaintiffs. Clemens K. Shapiro alleged that he is a natural person who owns personal property in his own name and real property jointly with his wife, none of which property is owned or used for purposes of business, and all of which property is owned and used for his personal enjoyment and that of his family. Jerome Herman alleged that he is a natural person and operates and conducts a business as a sole proprietor. Guy S. Ross and Eugene D. Ross allege that they are natural persons and operate, as a partnership, a business which owns property. M. Weil and Sons, Inc., a corporation, alleges that it is the owner of property situated in Cook County.

The complaint alleges that each of the plaintiffs is acting in a representative capacity on behalf of all others similarly situated. The defendants are those State and county officers who were named in the Lake Shore complaint. The complaint alleges the adoption of article IX-A and asserts various interpretations of that article, some of which are advanced by all of the plaintiffs and others by one or an-

other of the plaintiffs. To this complaint the defendant Lehnhausen, Director of the Department of Local Government affairs, filed a motion to dismiss on May 9, 1971. He also filed a "Petition for Instructions" which recited that the Lake Shore and Maynard cases were pending in the Supreme Court of Illinois, asserted that the issues in all of the three cases were substantially the same, and that it "would appear to be a duplication of effort for this Court to consider the issues involved in the case at bar [the Shapiro case] while at the same time the Illinois Supreme Court has essentially the same issues before it for consideration." The petition for instructions suggested that the Shapiro case be held in abeyance for the determination of the cases already pending before the Supreme Court. No order was entered with respect to this petition. On May 19, 1971, a motion to strike was filed in behalf of the defendant county officers. On May 28, 1971, an order was entered, by a judge other than the judge who heard the Lake Shore case, finding that the action was properly maintained as a class action and that each plaintiff had standing to bring the action in its own behalf and was a proper representative of the class he purported to represent. The order found that article IX-A "is free of the ambiguity and uncertainty of intendment charged by the plaintiffs, and that its intendment is clearly declared to prohibit the taxation of personal property by valuation exclusively as to natural persons, where that property is used, by them, for the personal enjoyment of themselves and their families." Except as to the plaintiff Clemens K. Shapiro and members of his class, the complaint was dismissed. All of the plaintiffs in the Shapiro case have appealed from this judgment.

The plaintiffs in the Maynard and Shapiro cases justify the institution of their actions upon the ground that there are deficiencies as to parties and as to legal propositions in the Lake Shore case which might, without the assistance which they volunteer to supply, preclude the possibility of

full consideration of the issues by this court. That it is not necessary that each person or group of persons favorably or unfavorably affected by a legislative classification be made parties to an action challenging the validity of that classification is apparent. Major cases involving discrimination of the sort here alleged have not required the presence, as parties, either in person or by representative, of all those affected. See, *e.g., Lawrence* v. *State Tax Com. of Miss.* (1932), 286 U.S. 276, 76 L.Ed. 1102, 52 S. Ct. 556.

There are no facual issues in the present cases, and the order of this court which consolidated the Lake Shore and Maynard cases provided: "Counsel may brief and argue all issues as to the validity and effect of the constitutional amendment known as Article IX-A of the Constitution of 1870." (See *Hux* v. *Raben* (1967), 38 Ill.2d 223.) Additional class actions were not necessary to place before the court all pertinent legal theories. We shall, however, consider the arguments advanced by counsel in those cases.

Neither the plaintiffs in the Maynard case nor those in the Shapiro case are content with the interpretation of article IX-A arrived at by Judge Walter P. Dahl in the Lake Shore case. That interpretation was that the new article "purports to prohibit the taxation of personal property by valuation as to 'individuals', and only as to 'individuals', while leaving unaffected those provisions of the Illinois Constitution and the Revenue Act of Illinois * * * which imposed such personal property taxes as to property owned by corporations and other 'non-individuals'."

One alternative construction, advanced by the plaintiffs in the Shapiro case, is that the "Illinois Constitution of 1870, as amended by the addition of Article IX-A, specifically prohibits, and declares to be unconstitutional the imposition in Illinois of the property taxes imposed by Article IX, Section 1, on all forms of property, real and personal or other, regardless of the ownership of that property or the use to which that property is put by its owner."

This construction is achieved by disregarding the fact that article IX-A is clearly concerned only with the taxation of personal property, and by concentrating upon the fact that the last sentence in the official explanation which appeared upon the ballot at the election on November 3, 1970, when article IX-A was approved, mentioned taxes upon both real and personal property. That explanation was as follows:

"The amendment would abolish the personal property tax by valuation levied against individuals. It would not affect the same tax levied against corporations and other entities not considered in law to be individuals. The amendment would achieve this result by adding a new article to the Constitution of 1870, Article IX-A, thus setting aside existing provisions of Article IX, Section 1, that require the taxation by valuation of all forms of property, real and personal or other, owned by individuals and corporations."

The last sentence of the explanation, however, is not a part of the amendment, and its reference to real property taxes was made in describing the existing provisions of article IX, section 1, which are modified by article IX-A.

Based upon the circumstance that the phrase "as to individuals" is printed in italics in article IX-A, the Maynard plaintiffs turn to materials other than the legislative explanations in a search for a technical meaning. They say: "The unusual circumstance that the words 'as to individuals' are italicized in the constitutional amendment, an unprecedented practice in constitutional drafting, strongly suggests that the General Assembly, in drafting Senate Joint Resolution No. 30, used the word 'individuals' as one having established technical significance and usage in the classification of taxpayers upon whom personal property taxes have been imposed."

They purport to find the technical meaning that they seek in the circumstance that two different forms, administratively prescribed, have been used for personal property tax returns. One form is to be used by "individuals, part-

nerships, and unincorporated associations owning or controlling personal property used in agriculture, and all individuals owning or controlling any personal property which is not owned or used in connection with any business (other than agriculture) * * *." The other form is to be used by "proprietorships, partnerships and unincorporated associates engaged in business (other than agriculture) * * *." On the assumption that the word "individuals" was intended to have an established technical meaning because it was printed in italics, the Maynard plaintiffs, and the Shapiro plaintiffs as well, argue that the word "individuals" was used to denote a class of natural persons owning personal property not used in business.

There is, however, a more prosaic explanation for the fact that the words "as to individuals" are printed in italics. When Senate Joint Resolution No. 30 was originally introduced on April 29, 1968, the proposed article IX-A read as follows: "Notwithstanding any other provision of this Constitution, the taxation of personal property by valuation is prohibited." (Senate Journal, April 29, 1969, p. 1038.) On May 15, 1969, Senate Joint Resolution No. 30 was amended "by striking the period and adding the following: 'as to individuals'." Senate Journal, May 15, 1969, p. 1407-8.

The added words were placed in italics in accordance with routine legislative practice, which contemplates that in the case of amendments, new material is to be italicized. The rules of the Senate of the 76th General Assembly provided: "All resolutions originated in the Senate proposing amendments to the Constitution shall be ordered printed and shall be printed in the same manner in which bills are printed." (Senate Journal, Feb. 18, 1969, p. 163.) And as to bills, they provided: "Senate Bills and House Bills in the Senate shall be printed with new matter in italics and omitted or superseded matter enclosed in brackets and underlined." Senate Journal, Feb. 18, 1969, p. 161.

There is thus no underpinning for the argument that the

General Assembly intended that the word "individuals" should be given an artificial meaning. The official explanations, which are not discussed in the Maynard brief, definitely negative such an intention. We have examined the other materials to which the Maynard and Shapiro plaintiffs have referred, but have found nothing which persuades us that the words of article IX-A should be given anything other than their natural meaning.

We conclude that the meaning of article IX-A is that *ad valorem* taxation of personal property owned by a natural person or by two or more natural persons as joint tenants or tenants in common is prohibited.

The Maynard case plaintiffs and all of the Shapiro case plaintiffs, with the exception of Shapiro, contend that article IX-A, so construed, violates the equal-protection clause of the fourteenth amendment to the constitution of the United States. Lake Shore contends that it is the Revenue Act, which must be regarded as amended by article IX-A, rather than the article itself, which violates the equal-protection clause. We shall first consider the basic question of the validity of the discrimination effected by article IX-A.

The new article classifies personal property for the purpose of imposing a property tax by valuation, upon a basis that does not depend upon any of the characteristics of the property that is taxed, or upon the use to which it is put, but solely upon the ownership of the property. If the property is owned by A, it is taxable; if it is owned by B, it cannot be taxed. Of course the equal-protection clause of the fourteenth amendment does not prohibit classification, and absolute precision is not required of the States in drawing the lines between classes. Nevertheless, a State may not, under the guise of classification, arbitrarily discriminate against one and in favor of another similarly situated.

The Supreme Court of the United States has thus described the governing principles:

"Of course, the States, in the exercise of their taxing power, are subject to the requirements of the Equal Protection Clause of the Fourteenth Amendment. But that clause imposes no iron rule of equality, prohibiting the flexibility and variety that are appropriate to reasonable schemes of state taxation. The State may impose different specific taxes upon different trades and professions and may vary the rate of excise upon various products. It is not required to resort to close distinctions or to maintain a precise, scientific uniformity with reference to composition, use or value. *Bell's Gap R. Co.* v. *Pennsylvania,* 134 U.S. 232, 237; *Magoun* v. *Illinois Trust & Savings Bank,* 170 U.S. 283, 293; * * * *State Board of Tax Com'rs of Indiana* v. *Jackson,* 283 U.S. 527, 537. 'To hold otherwise would be to subject the essential taxing power of the State to an intolerable supervision, hostile to the basic principles of our government and wholly beyond the protection which the general clause of the Fourteenth Amendment was intended to assure.' *Ohio Oil Co.* v. *Conway, supra,* 281 U.S., at 159.

"But there is a point beyond which the State cannot go without violating the Equal Protection Clause. The State must proceed upon a rational basis and may not resort to a classification that is palpably arbitrary. The rule often has been stated to be that the classification 'must rest upon some ground of difference having a fair and substantial relation to the object of the legislation.' *Royster Guano Co.* v. *Virginia,* 253 U.S. 412, 415; *Louisville Gas & Electric Co.* v. *Coleman,* 277 U.S. 32, 37; *Air-way Electric Appliance Corp.* v. *Day,* 266 U.S. 71, 85; *Schlesinger* v. *Wisconsin,* 270 U.S. 230, 240; *Ohio Oil Co.* v. *Conway,* 281 U.S. 146, 160." *Allied Stores of Ohio, Inc.* v. *Bowers* (1959), 358 U.S. 522, 526-27, 3 L. Ed. 2d 480, 484-85, 79 S. Ct. 437.

When classifications are reasonable, it is because of differences in the nature of the property or in the use to which it is put. The nature of the tax is important, too, for what

may be a reasonable classification for a license, or for a privilege tax, is not necessarily a reasonable classification for a property tax.

Mr. Justice Brandeis stated the criterion this way in his dissenting opinion in *Quaker City Cab Co.* v. *Pennsylvania,* 277 U.S. 389, 406, 72 L. Ed. 927, 923, 48 S. Ct. 553: "In other words, the equality clause requires merely that the classification shall be reasonable. We call that action reasonable which an informed, intelligent, just-minded, civilized man could rationally favor. In passing upon legislation assailed under the equality clause we have declared that the classification must rest upon a difference which is real, as distinguished from one which is seeming, specious, or fanciful, so that all actually situated similarly will be treated alike; that the object of the classification must be the accomplishment of a purpose or the promotion of a policy, which is within the permissible functions of the state; and that the difference must bear a relation to the object of the legislation which is substantial, as distinguished from one which is speculative, remote or negligible."

Article IX-A must be read against the scheme of property taxation established pursuant to article IX of the constitution of 1870, which, with respect to property taxes, contemplates the levy of "a tax, by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property * * *." (Const. of 1870, art. IX, sec. 1.) Taxes levied by municipal corporations are required to be "uniform in respect to persons and property, within the jurisdiction of the body imposing the same." (Const. of 1870, art. IX, sec. 9.) The permissible exemptions from taxation are thus described: "The property of the state, counties, and other municipal corporations, both real and personal, and such other property as may be used exclusively for agricultural and horticultural societies, for school, religious, cemetery and charitable purposes, may be

exempted from taxation; but such exemption shall be only by general law." Const. of 1870, art. IX, sec. 3.

Against this background the incongruity of the prohibition contained in article IX-A is apparent. It cannot rationally be said that the prohibition promotes any policy other than a desire to free one set of property owners from the burden of a tax imposed upon another set. All of the arguments in favor of the abolition of the personal property tax upon the property owned by natural persons apply with equal force in favor of the abolition of that tax upon the property owned by others. For the purpose of a tax by valuation upon the ownership of real or personal property, the identity of the owner is a neutral consideration, as is his status as sole proprietor, joint tenant, tenant in common, partner (Ill. Rev. Stat. 1969, ch. 106½, par. 25), limited partner (Ill. Rev. Stat. 1969, ch. 106½, par. 61), member of a professional service corporation (Ill. Rev. Stat. 1969, ch. 32, par. 415—1 et seq.), or of a professional association (Ill. Rev. Stat. 1969, ch. 106½, par. 101 et seq.; see Sup. Ct. Rule 721, 43 Ill.2d R. 721.

We hold, therefore, that the discrimination produced by article IX-A violates the equal-protection clause of the fourteenth amendment. Apart from that discrimination, the validity of the Revenue Act is not challenged, and we hold that it is article IX-A which must fall. The validity of article IX of the constitution and of the Revenue Act are therefore not affected.

The judgment of the circuit court of Cook County in No. 44199 (Lake Shore) is reversed, and the cause is remanded to that court with directions to dismiss the complaint. Insofar as the judgment of the circuit court in No. 44432 (Shapiro) dismissed the complaint as to all of the plaintiffs other than Clemens K. Shapiro, it is affirmed; insofar as that judgment sustained the complaint as to Clemens K. Shapiro, it is reversed and the cause is re-

manded to that court with directions to dismiss the complaint. In No. 44308 (Maynard), the complaint is dismissed.

No. 44199—*Reversed and remanded,*
*with directions.*
No. 44308—*Complaint dismissed.*
No. 44432—*Affirmed in part and*
*reversed in part and*
*remanded, with directions.*

Mr. JUSTICE DAVIS, dissenting:

The majority opinion holds that our State constitution of 1870, as modified by article IX-A, may not validly classify exemptions from *ad valorem* personal property taxation on the basis of the ownership of the property, and that such exemption may be made only upon a classification based upon the nature of the property or its use. I dissent from this pronouncement.

It is clear that the United States constitution imposes no particular modes of taxation upon the States and leaves them unrestricted in their power to tax those domiciled within their borders so long as the tax imposed is upon property within the State, or on privileges enjoyed there, and so long as the tax is not so palpably arbitrary or unreasonable as to infringe upon the equal protection and due process requirements of the fourteenth amendment. *Lawrence* v. *State Tax Commission of Mississippi,* 286 U.S. 276, 76 L. Ed. 1102, 1105, 52 S. Ct. 556, 559.

The majority opinion recognizes that "the equal protection clause of the fourteenth amendment does not prohibit classification, and absolute precision is not required of the States in drawing the lines between classes"; and that, "Nevertheless, a state may not, under the guise of classification, arbitrarily discriminate against one and in favor of another similarly situated." This general rule is found in the quotation from *Allied Stores of Ohio* v. *Bowers,* 358 U.S. 522, 3 L. Ed. 2d 480, 79 S. Ct. 437, cited by the

majority. The rule has been expressed and exemplified many times in varying terms. Examples are: "Any classification of taxation is permissible which has reasonable relation to a legitimate and governmental action" (*Welch* v. *Henry,* 305 U.S. 134, 83 L. Ed. 87, 92, 59 S. Ct. 121, 124); "It is a salutary principal of judicial decision, * * * that the burden of establishing the unconstitutionality of a statute rests on him who assails it, and that courts may not declare a legislative discrimination invalid unless, viewed in the light of facts made known or generally assumed, it is of such a character as to preclude the assumption that the classification rests upon some rational basis within the knowledge and experience of the legislators. A statutory discrimination will not be set aside as the denial of equal protection of the laws if any state of facts reasonably may be conceived to justify it" (*Metropolitan Casualty Ins. Co.* v. *Brownell,* 294 U.S. 580, 584, 79 L. Ed. 1070, 1072-3, 55 S. Ct. 538, 540); "Neither due process nor equal protection imposes upon a state any rigid rule of equality of taxation. [Citations.] This Court has repeatedly held that inequalities which result from a singling out of one particular class for taxation or exemption infringe no constitutional limitation." (*Carmichael* v. *Southern Coal & Coke Co.,* 301 U.S. 495, 509, 81 L. Ed. 1245, 1253, 57 S. Ct. 868, 872); and it is only the invidious discrimination or classification which is patently arbitrary and utterly lacking in rational justfication which is barred by the due-process or equal-protection clauses. *Flemming* v. *Nestor,* 363 U.S. 603, 611, 612, 4 L. Ed. 2d 1435, 1445, 80 S. Ct. 1367.

The variety of ways of expressing the rule that a legislative classification for taxation purposes is not violative of the fourteenth amendment if it has a reasonable relation to the subject of the particular legislation so that all persons similarly situated are treated alike, and pertinent citations, are found in 16A C.J.S. Constitutional Law, secs. 520, 521, 649.

In this litigation, as is often the case, the particular expression of the rule which the majority of the court chooses to rely upon may be dictated by the outcome which the judges of the majority think to be proper. Beyond doubt, the fourteenth amendment does not impose on the States an inflexible and technical rule of equal taxation, and the extent to which the States may go in devising a legislative classification for taxation is illustrated by the statement of the Supreme Court in *Lawrence* v. *State Tax Commission of Mississippi,* 286 U.S. 276, 284, 285, 76 L. Ed. 1102, 1108, 52 S. Ct. 556, 559: "The equal protection clause does not require the state to maintain a rigid rule of equal taxation, to resort to close distinctions, or to maintain a precise scientific uniformity; and possible differences in tax burdens not shown to be substantial or which are based on discriminations not shown to be arbitrary or capricious, do not fall within constitutional prohibitions."

The Supreme Court in *Lawrence* also stated that there is no constitutional requirement that a system of taxation should be uniform as applied to individuals and corporations, regardless of the circumstances in which it operates, (286 U.S. 276, 283, 76 L. Ed. 1107, 52 S. Ct. 556, 558,) and we have just recently held that for the purpose of income taxation, corporations may be placed in one class and individuals in another and each taxed differently. (*Thorpe* v. *Mahin,* 43 Ill.2d 36.) The language of the court at pages 45 and 46 is worthy of repetition:

"It is next contended that the Act violates the uniformity provision of section 1 of article IX of our constitution and the equal-protection and due-process requirements of the fourteenth amendment to the United States constitution by creating multiple classes and discriminating unreasonably among them. This contention is advanced specifically against the provisions which tax corporations at a 4% rate and individuals, trusts, and estates at 2½% rate.

"Both the equal-protection argument and the uniformity

argument depend on the reasonableness of putting corporations in one class and individuals, trusts, and estates in another class for purposes of this tax. (See *Grenier & Co.* v. *Stevenson,* 42 Ill.2d 289.) When the due-process contention has been advanced, this court, citing Supreme Court cases, has stated: 'It has long been settled that the power of the legislature to make classifications, particularly in the field of taxation, is very broad, and that the fourteenth amendment imposes no "iron rule" of equal taxation. [Citations.] The reasons justifying the classification, moreover, need not appear on the face of the statute, and the classification must be upheld if any state of facts reasonably can be conceived that would sustain it. [Citations.] The burden therefore rests on one who assails the statute to negate the existence of such facts. [Citations.]' *Department of Revenue* v. *Warren Petroleum Corp.,* 2 Ill.2d 483, 489-490.

"When the uniformity contention has been advanced this court has stated: 'It is well established that the legislature has broad powers to establish reasonable classifications in defining subjects of taxation * * *. Such classification must, however, be based on real and substantial differences between persons taxed and those not taxed. [Citations.]' (*Klein* v. *Hulman,* 34 Ill.2d 343, 346-347.) 'In order to prevail on an allegation that a statute or portion of a statute is unconstitutional, the plaintiff has the burden of showing how the legislature has violated the constitution.' *Grenier & Co.* v. *Stevenson,* 42 Ill.2d 289, 291.

"In short, petitioners have the burden of showing that the challenged classification is unreasonable. Their only assertion is that 'corporations are at a disadvantage when they compete in the same type of business with individual proprietorships or partnerships because of the rate differential.' This assertion has been rejected by the Supreme Court as to a Federal tax (*Flint* v. *Stone Tracy Co.,* 220 U.S. 107, 31 S. Ct. 342, 55 L. Ed. 389), and as to a State tax (*Fort Smith Lumber Co.* v. *Arkansas ex rel. Arbuckle,* 251 U.S.

532, 40 S. Ct. 304, 64 L. Ed. 396), and by this court (*People* v. *Franklin National Insurance Co. of New York*, 343 Ill. 336; *Michigan Millers Mutual Fire Insurance Co.* v. *McDonough*, 358 Ill. 575), where, for purposes of the tax in question, corporations were placed in one class and individuals in another and each were taxed differently."

The majority, however, holds that as to a property tax the classification for exemption from taxation may not be based upon the character of the ownership, but only upon the nature of the property itself. Thus, the majority is of the opinion that the classification may not be based upon the corporation—individual distinctions which we upheld in *Thorpe*.

In *Thorpe* this court reversed its prior holding that income is property (*Backrach* v. *Nelson*, 349 Ill. 579), and held that an income tax was not a property tax. The significance of this determination was that section 1 of article IX of our constitution of 1870 required the levying of a tax "by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property * * *." At the same time, the constitutional provisions permitted a tax upon franchises and privileges in such manner as the legislature might direct, so long as it was uniform as to each "class." Obviously, the legislature could not, under the foregoing provisions, impose an income tax upon corporations at one rate and upon individuals at a lesser rate if it were a tax on property. Our constitution then prohibited any tax on property unless structured to be uniform as to valuation.

After reaching the conclusion that an income tax was not a property tax, the court faced no barrier in upholding the Illinois Income Tax Act. In the case at bar, after article IX-A amendment to the constitution of 1870 was adopted, the unformity provisions of section 1 of article IX were no longer effective as to the taxation of personal property of individuals, and the court should have found no impediment

to upholding the validity of article IX-A and the abolishment of this tax as to individuals.

Constitutional provisions requiring property to be taxed uniformly in proportion to its value are not uncommon to the States. In the California Railroad Tax cases (*San Mateo County* v. *Southern Pacific R. Co.*, 13 Fed. 722, appeal dismissed per stipulation, 116 U.S. 138; *Santa Clara County* v. *Southern Pacific R. Co.*, 18 Fed. 385, aff'd other grounds, 118 U.S. 394) which held that unequal taxation, based upon the character of the owner, was forbidden by the fourteenth amendment, a constitutional provision requiring uniformity of taxation was involved. Even though the California constitution specified that all property be taxed in proportion to its value, laws of the State especially provided that as to railroad properties only, the amount of a mortgage on the real estate was not to be deducted in ascertaining the value of the real estate for taxation purposes. The trial court quite properly held that this method of valuation, as to railroads only, was improper under the circumstances, and the United States Supreme Court affirmed the lower court on a nonconstitutional basis without reaching the constitutional question. The California railroad tax cases should be read, with cognizance, that the State constitution required all property to be taxed in proportion to its value, and that the cases arose at a time when it was necessary to establish that the word, "persons" as used in the fourteenth amendment, included corporations. Apparently, the latter point had a strong bearing on the expressions found in these cases.

In the case at bar, by virtue of the adoption of article IX-A, there is no constitutional requirement that taxes on personal property be uniform as to individuals and corporations so that each pays a tax in proportion to the value of his or its property. Article IX-A, which we are called upon to consider, eliminated this requirement; it provides that "the taxation of personal property is prohibited as to individuals." Thus, the case at bar is a far cry from one in

which the legislature is attempting to discriminate between individuals and corporations in the face of a constitutional provision prohibiting such discrimination. Here the question for determination is whether, absent the requirement of a State constitution that corporate and individual personal properties be taxed the same, the equal-protection clause of the fourteenth amendment permits them to be taxed differently? I believe that it does!

Without the constitutional requirement of uniformity on the taxation of properties, there is no reason or justification in the case at bar for stating that personal property taxation may not be classified on the basis of the ownership of the property. The constitution of 1870, as amended by article IX-A, does not so provide, and the constitution of 1970 suggests the contrary. Article IX of the constitution of 1970 relates to revenue, and section 5 thereof pertains to personal property taxation. Subsection (a) thereof provides that the legislature "may classify personal property for purpose of taxation by valuation, abolish such taxes on any or all *classes* and authorize the levy of taxes in lieu of the taxation of personal property by valuation." (Emphasis ours.) Without more, it could be said that the word, "classes" refers only to classes of property, but subsection (c) refers to the abolition of all *ad valorem* personal property taxes by January 1, 1979, and the replacement of the lost revenue, and provides: "Such revenue shall be replaced by imposing statewide taxes, other than ad valorem taxes on real estate, solely on those *classes* relieved of the burden of paying ad valorem personal property taxes because of the abolition of such taxes subsequent to January 2, 1971." (Emphasis ours.) Obviously, the word, "classes" as there used, does not refer to classes of property; it refers to classes of property owners and provides for taxation according to the character of the owner. If the majority opinion is to stand and article IX-A held to be unconstitutional, then under consistent application of its rationale, subsection (a) of sec-

tion (5) of the new constitution is likewise unconstitutional.

The majority opinion chose to rely upon the rationale of *Quaker City Cab Co. v. Commonwealth of Pennsylvania,* 277 U.S. 389, 72 L. Ed. 927, 48 S. Ct. 553. I believe that the elucidation and logic of the dissent of Mr. Justice Brandeis, in which Mr. Justice Holmes concurred, offers the better reason. Therein, Mr. Justice Brandeis made some observations which are particularly apropos here. The court had under consideration a tax on the gross receipts of corporate taxicab companies where no similar tax was imposed upon the receipts of individuals who operated taxicabs. The majority held that the classification was based solely upon the character of the owner, and that it violated the fourteenth amendment.

In his dissenting opinion, 277 U.S. 389, 403-412, 72 L. Ed. 927, 48 S. Ct. 553, 555-558, Mr. Justice Brandeis observed that the tax applied equally to all corporations, foreign and domestic. He stated that the fundamental question before the court was: "Does the equality clause prevent a state from imposing a heavier burden of taxation upon corporations engaged exclusively in intrastate commerce, than upon individuals engaged under like circumstances in the same kind of business? The narrower question presented is whether this heavier burden may be imposed by a form of tax 'not peculiarly applicable to corporations'; that is, by a tax of such a character that it might have been extended to individuals if the legislature had seen fit to do so." He then pointed out that the difference between a business carried on in corporate form and one carried on by natural persons is "a real and important one." He observed that the discrimination was not based upon any difference in the source of income or in the character of the property employed, and stated the obvious: that the requirement that a classification must be reasonable does not imply that the policy embodied in the classification must be deemed by the court to be a wise one. He concluded that a State is per-

mitted to impose upon corporations more than their pro rata share of the burden of taxation, and that nothing in the Federal constitution prohibits this.

It seems that this is exactly what we held in *Thorpe* v. *Mahin,* 43 Ill.2d 36. We there recognized what we called the obvious advantages of carrying on a business in the corporate form: the corporate ownership of property, freedom from personal liability for corporate obligations, continuity of existence, *etc.* We acknowledged that there are sufficient differences between the privilege of earning or receiving income as a corporate entity and that of earning or receiving income as an individual to justify the variance in tax rates between the individual and the corporation, and here we should recognize that there are sufficient differences between the privilege of owning property as a corporate entity and the privilege of owning it as an individual to justify the exemption in the case of the individual property owner. The fact that the corporation may in some respects be placed at a disadvantage in its competition with individuals owning similar property and engaged in the same business should not condemn the classification as unreasonable. *Thorpe* v. *Mahin,* at p. 46.

There is no more compelling reason to hold that the classification of personal property for tax purposes must be based upon the nature of the property than there is to adjudge that the classification for income tax purposes must be based on the source or type of income to be reported. The article IX-A constitutional amendment creates a classification based upon the distinctions inherent between corporations and individuals—a distinction which we have recognized and upheld as valid under the equal-protection-clause requirement of the fourteenth amendment in *Thorpe* v. *Mahin.*

Another matter is worthy of mention in our consideration of this case. The evils and the inequities in the ad-

ministration of the personal property tax collections in this State are known to everyone. That these inequities apply with equal force to corporate taxpayers and individual taxpayers may, or may not, be totally true. The desire and purpose of systematically eliminating this archaic form of taxation are apparent from the actions of the people and the legislature of the State. The General Assembly, which drafted and adopted Senate Joint Resolution No. 30, had previously at the same legislative session already exempted from such taxation, household furniture and one automobile, per household, used for personal pleasure. (Ill. Rev. Stat. 1969, ch. 120, par. 500.21a.) The article IX-A amendment was overwhelmingly ratified by the people of the State. The constitution of 1970, likewise adopted by the vote of the people, expressed concern over the form and use of personal property taxation. The newly-adopted constitution prohibits the reinstatement of any *ad valorem* personal property tax abolished before July 1, 1971, the effective date of the new constitution. This provision refers to the personal property tax as to individuals which was abolished by article IX-A, and the majority opinion runs counter to this constitutional prohibition in that it reinstates the personal property tax as to individuals. In addition, the new constitution provides that all *ad valorem* personal property taxes shall be abolished on or before January 1, 1979.

The obvious spirit of the article IX-A amendment, the will of the people, as expressed by its adoption, and the intent and purpose of the legislature, should not be thwarted unless a construction to this effect is required. Thus, it is very appropriate that we consider the mischief sought to be remedied and the purpose to be accomplished by the article IX-A amendment. (*Wolfson* v. *Avery,* 6 Ill.2d 78, 88.) Likewise, the court should memorialize the salutary rule of law that an amendment to a State constitution should be deemed violative of the Federal constitution only where

162

the asserted constitutional rights cannot otherwise be protected and effectuated. *Reynolds* v. *Sims,* 377 U.S. 533, 12 L. Ed. 2d 506, 540, 84 S. Ct. 1362.

After considering the background of this constitutional amendment and the purpose which it, along with the other contemporary legislative enactments and constitutional adoptions, seeks to accomplish, I believe that the classification found in the article IX-A amendment does not constitute an invidious discrimination; that it seeks to accomplish and promote a valid policy expressive of the will of the people and the intent and purpose of the legislature; and that the distinction upon which the classification for exemption is based does not overstep the limitations imposed by the fourteenth amendment.