LINCOLN NATIONAL BANK et al., Plaintiffs-Appellants, v. P. J. CULLERTON et al., Defendants-Appellees.

(No. 59216;

First District (1st Division)—April 1, 1974.

Gann, McIntosh, Flaherty & Parker and Marovitz, Powell, Pizer & Edelstein, both of Chicago (Donald J. Parker and Nathan N. Powell, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Sheldon Gardner and Paul P. Biebel, Jr., Assistant State's Attorneys, of counsel), for appellees.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

This appeal presents additional aspects of the legal history of the personal property tax of Illinois. We are concerned here with attempts to obtain refunds of personal property taxes for 1971 paid by Lincoln National Bank and Mercantile National Bank of Chicago, both national banking associations (plaintiffs), upon capital stock issued by them and owned by various individuals. Plaintiffs bring this suit on behalf of themselves and all other taxpayers similarly situated. The defendants, all in their official capacities, are the assessor, county treasurer and county clerk of Cook County and also the Director of the Department of Local Government Offices of Illinois and the Treasurer of the State of Illinois. The three officials of Cook County filed a motion to strike and dismiss plaintiffs' complaint, as amended. The two State officials filed an answer to the complaint. After a hearing by the court, the motion to dismiss was granted and plaintiffs' complaint, as amended, was dismissed with prejudice. Plaintiffs appeal. By leave of this court, the State officials have adopted the brief filed in behalf of the three county officials by the State's Attorney of Cook County.

The comparatively simple facts appear from the properly pleaded allegations of plaintiffs' complaint, as amended, which are deemed admitted by the motion to dismiss. (See *Holiday Magic, Inc. v. Scott,* 4 Ill.App.3d 962, 963, 282 N.E.2d 452 and other cases therein cited.) Plaintiffs' complaint, as amended, alleged that they are taxpayers of Illinois doing business in this State. Despite the amendment to the Illinois Constitution of 1870 prohibiting taxation of personal property owned by individuals, the assessor of Cook County assessed all outstanding shares of bank stock as personal property and demanded payment of these taxes for the years 1970 and 1971. Numerous shares of stock in various banks were owned by individuals who were not subject to personal property taxes. Pursuant to long-standing custom, the assessor and county collector assessed and billed plaintiffs, and other Illinois banks similarly situated, for personal property taxes on the value of their outstanding shares of capital stock owned by their respective shareholders. Plaintiffs and others similarly situated paid these taxes from their general funds and did not withhold dividends from shareholders for payment of these taxes and individual shareholders did not reimburse the banks for the taxes thus paid. Demand was made upon the county treasurer for refund of these tax payments which he has refused.

The motion to dismiss filed by defendants set forth that plaintiffs are not the actual taxpayers and were not liable to pay the taxes in question so they could not bring the action. The order dismissing the cause found that natural persons are the only taxpayers entitled to refunds of per-

sonal property taxes and plaintiffs had paid the taxes as volunteers without legal obligation to do so.

In this court, plaintiffs urge that all taxes imposed upon bank stock owned by natural persons must be refunded; plaintiffs paid the tax in question under legal duress so that the payments were not voluntary; whenever taxes are paid by one person to the credit of another, the payor is entitled to reimbursement if it was reasonable for him to have made the payment; and, finally, that assessment of personal property taxes on shares of stock in national banks is specially related to Federal law governing State taxation and actual payment of such taxes by these banks has always been an integral part of the taxing scheme. Counsel for the three county officials involved in this appeal urge in response that the plaintiffs are not the primary obligators of the personal property tax which is upon stock owned by individuals; payment by plaintiffs, on behalf of its shareholders without legal obligation to do so was voluntary; and, in the absence of statutory authorization, taxes voluntarily paid cannot be recovered. Collaterally, these defendants urge that plaintiffs are not the taxpayers who should benefit from legislation authorizing refund of personal property taxes imposed after January 1, 1971.

It is necessary first to note certain legal matters which bear upon the rights of the parties. By referendum vote, article IX-A was added to the Illinois constitution of 1870 effective January 1, 1971:

> "Notwithstanding any other provision of this Constitution, the taxation of personal property by valuation is prohibited as to individuals." [1]

The legislative and other background of this amendment appears in *Lake Shore Auto Parts Co. v. Korzen*, 49 Ill.2d 137, 273 N.E.2d 592. The supreme court there held article IX-A invalid on the ground "that the discrimination produced by article IX-A violates the equal-protection clause of the fourteenth amendment." (49 Ill.2d at 151.) The United States Supreme Court reviewed this decision and held article IX-A constitutionally valid. (*Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 35 L.Ed.2d 351, 93 S.Ct. 1001.) On April 25, 1973, upon remand of the cause, the Illinois Supreme Court filed a supplemental opinion which confirmed exemption from "*ad valorem* taxation of property owned by a natural person or by two or more natural persons as joint tenants or tenants in common." (*Lake Shore Auto Parts Co. v. Korzen*, 54 Ill.2d 237, 239, 296 N.E.2d 342.) The court defined personal property remain-

---

[1] The Illinois constitution of 1970 in turn provided that "Any *ad valorem* personal property tax abolished on or before the effective date of this Constitution shall not be reinstated." Ill. Const. 1970, art. IX, sec. 5(b).

ing subject to taxation, after the effective date of article IX-A of the Illinois constitution of 1870, as including that owned by limited partnerships, trusts and other fiduciaries and other similar categories. The court also used specific language regarding bank stock (54 Ill.2d at 239):

> "Bank stock, like the shares of any other corporation, is exempt only when owned by a natural person or by two or more natural persons as joint tenants or tenants in common."

Certain provisions of the Illinois Revenue Act should also be noted. Their pertinent parts may be summarized as follows:

Section 76 of the Act (Ill. Rev. Stat. 1971, ch. 120, par. 557) provides that shareholders of incorporated banks located in Illinois, whether organized under the law of Illinois or of the United States, shall be assessed and taxed upon the value of their shares of stock. Their shares are to be listed and assessed with regard to ownership and value as they existed on the first day of April, annually.

Section 77 of the Act (Ill. Rev. Stat. 1971, ch. 120, par. 558) provides that each bank shall keep a full and correct list of the names and residences of its shareholders and the number of shares held by each. The assessor is to report to the county clerk a correct list of these names and residences together with the number and assessed value of all such shares. The county clerk is to enter the valuation of the shares in the names of the respective owners thereof and to compute and extend the taxes accordingly. The tax against these shares shall remain a lien thereon until payment of the tax. In addition, for the purpose of collecting these taxes, it is the duty of every bank, or the managing officers thereof, to retain dividends belonging to the shareholders as necessary to pay taxes levied upon their shares until the taxes have been paid. Officers of any bank who pay, or authorize payment of such dividends contrary to the statutory provisions, are liable for the tax. If the tax is not paid, the collector shall sell the shares to pay the same like other personal property.

It should also be noted that, after the first opinion of the Supreme Court of Illinois in *Lake Shore Auto Parts Co.*, (filed July 9, 1971), the legislature further amended the Revenue Act by adding section 195.01 (Ill. Rev. Stat. 1973, ch. 120, par. 676.01), effective July 27, 1972. This amendment provided that the county collector should create a special interest bearing escrow account in which he was to deposit an amount equal to all payments of *ad valorem* personal property taxes extended in 1972 against personal property owned by a natural person, or two or more natural persons as joint tenants or tenants in common, pending final disposition of the *Lake Shore Auto Parts Co.* litigation. The amendment

specified that "[a]ll such payments shall be considered to have been made under protest." Each taxpayer for whom tax payments were placed in escrow was to be eligible for automatic full repayment if such personal property taxes were ultimately held invalid, notwithstanding the provisions of sections 194 and 195 of the Revenue Act which pertain to payment of taxes under protest.

It may also be of interest, if not directly essential, to note the provisions of pertinent Federal law (12 U.S.C. Sec. 548 (1971)). This statute authorizes the legislature of each State to determine and direct, subject to the provisions thereof, the manner and place of taxation of all shares of national banking associations located within its limits. The States are expressly authorized to tax the shares; or, alternatively, to include dividends derived from the shares in the taxable income of the owner and holder of the shares; to tax the bank on the net income thereof or according to or measured by the net income. Where shares are owned by nonresidents of the State, the bank itself is to pay the tax thereon as agent of the nonresident shareholders.

Each of the parties commences the argument by setting forth basic and generally accepted principles. Plaintiffs first urge that, under the constitutional provisions and statutes above noted, personal property taxes could not be imposed upon or collected on bank stock owned by natural persons. It is clear from this initial premise, which must be completely accepted, that, if these tax payments had been made by the natural persons, who are admittedly the owners of the stock in question, a refund of the taxes thus paid should be made. Defendants, however, predicate their argument upon a major premise which is equally valid. They urge that plaintiffs are not the primary obligators of the personal property tax but that the tax was owed only from the individuals who were the actual owners thereof. This legal proposition has been announced and adhered to in a number of decided cases. In *People ex rel. County Collector v. First National Bank*, 33 Ill.2d 457, 211 N.E.2d 713, the supreme court pointed out, "It has long been held, under the substantially identical predecessor sections of the present Revenue Act, that the holder of shares of a bank, not the bank itself, shall be assessed and taxed upon its shares." (33 Ill.2d at 459.) This principle is quite clear particularly in cases such as the one before us which does not involve allegation or proof that a bank has declared and paid a dividend. Other authorities supporting this proposition have been cited by the supreme court. 33 Ill.2d at 459.

Thus, we have illustrated the divergent positions of the parties. Plaintiffs reason that because the stock here involved is actually owned by natural persons, the taxes must be refunded. Defendants urge that since

the banks were not primarily liable for the taxes in question, they made payment thereof as mere volunteers so that they are not entitled to obtain the refund.

It should also be noted that defendants have taken the position in this court that insofar as these 1972 tax collections represent assessments upon personal property owned by individuals, a refund should be made. The issue raised by defendants goes only to the identity of the person who should receive the refund. The question is whether the county officials should be obliged to refund to the banks, such as plaintiffs who actually paid these taxes, or to the various individuals who are the actual owners of the property assessed. In the consolidated litigation which resulted in the two opinions of the supreme court in the *Lake Shore Auto Parts* cases, refunds of all of the affected 1972 personal property taxes are presently being processed in the circuit court. A group of individual taxpayers have petitioned the circuit court to make the refunds involved in the case before us directly to them. The county officials, who are defendants in the circuit court, have answered this petition and have asserted that the pertinent section of the Revenue Act of Illinois (Ill. Rev. Stat. 1973, ch. 120, par. 676.01) is not clear as to whether the refund should be made to the individual who owned the bank stock or to the bank which actually made the payment. The answer further points out the pendency of the litigation in this court and the risk of inconsistent court rulings.

The basic question which thus presents itself is construction of section 195.01 of the Revenue Act to determine whether the intent of the legislature requires refund to be made to the banks or to the individuals who own the bank stock now exempt. This section of the statute first requires the county collector to establish an escrow equal to the amount of personal property taxes against property owned by natural persons. "Each taxpayer for whom such payments are placed in escrow shall be eligible for automatic full repayment * * *." In equity, the individual owners of the stock are undoubtedly the taxpayers in whose behalf the taxes were paid and for whom the tax payments should have been placed in escrow. In the past, when stock owned by individuals was subject to the tax, payment was actually made by the banks in behalf of the shareholders. Only a long-standing custom, utilized purely for administrative reasons, permitted the banks themselves to act in behalf of the shareholders as a conduit for payment to the taxing authorities. This procedure was of substantial benefit to the banks as well as to the taxing authorities. The tax money actually came from all of the shareholders since they were the equitable owners of all the corporate property. Each payment of taxes by the bank from its general funds operated as a

*pro tanto* reduction of the assets of all of the shareholders. Therefore, refunds to the individuals are clearly possible and appear to be within the purview of the statute and the intention of the legislature.

Furthermore, reasoning from the premise, adopted by both sides of the controversy, that a refund of these taxes should necessarily be made, a refund to the banks would be grossly inequitable. This would enable the banks to hold these refunds as part of their general assets which in turn would redound to the proportionate benefit of all shareholders, including those legal persons not individuals to whom the legislature never intended to make refunds. To sustain plaintiffs' contention but also to channel the refunds to the natural owners exclusively in accordance with the clear mandate of the constitutional referendum, as construed by the courts, the refunds would necessarily be made to the banks for the use and benefit of only the natural persons owning stock. This would present administrative and other problems which would best be solved by remitting the refunds directly to the individual owners entitled thereto. Machinery for this is ready to function in the proceedings in the *Lake Shore Auto Parts* case now pending in the circuit court.

Under these circumstances, we need not decide the issue as to whether payments by the banks were voluntary. By section 195.01 of the Revenue Act, the legislature has effectively created a statutory scheme for refund of these taxes as though they had been paid under protest. See *Snyderman v. Isaacs*, 31 Ill.2d 192, 194, 201 N.E.2d 106.

It follows necessarily that the order of dismissal appealed from should be affirmed so that the process of refund can continue as indicated.

Order affirmed.

EGAN, P. J., and HALLETT, J., concur.