**FIRST TRUST AND SAVINGS BANK OF TAYLORVILLE, an Illinois Corporation, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 79–1653.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 7, 1979.

Decided Feb. 13, 1980.

James O. Beavers, Taylorville, Ill., for plaintiff-appellant.

Jay W. Miller, Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellee.

Before TONE, WOOD and CUDAHY, Circuit Judges.

CUDAHY, Circuit Judge.

The issue on this appeal is whether appellant bank realized income under the tax benefit rule when personal property taxes it had paid on behalf of its shareholders and deducted from its income for federal income tax purposes in 1972 were subsequently refunded in 1973. The district court held, on facts stipulated by the parties, that the refunded taxes were income. We affirm.

Plaintiff-appellant, First Trust and Savings Bank of Taylorville (the "Bank"), is a banking corporation doing business in Taylorville, Illinois. The Bank reports income and expenses on the accrual method of accounting, and its tax returns are filed on a calendar year basis.

Prior to 1971, stockholders of any incorporated bank located within Illinois were subject to personal property tax on the value of their shares, in the taxing district where the bank was located. Ill.Rev.Stat. ch. 120, § 557. In order to satisfy the mandate of Ill.Rev.Stat. ch. 120, § 558, which required banks to retain dividends sufficient to pay all such personal property taxes assessable against their shares, banks customarily paid these taxes on their stockholders' behalf.

The Illinois Constitution was amended effective January 1, 1971, to prohibit taxation of personal property owned by individuals. Ill.Const. art. IX–A. But, in *Lake Shore Auto Parts Co. v. Korzen*, 49 Ill.2d 137, 273 N.E.2d 592 (1971), this amendment was struck down by the Illinois Supreme Court as violative of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The case was then

taken by writ of certiorari to the United States Supreme Court.

To provide for the treatment of personal property taxes collected in the interim between the Illinois Supreme Court's ruling in *Lake Shore* and the then anticipated resolution of the issue by the U. S. Supreme Court, the Illinois legislature, enacted Ill. Rev.Stat. ch. 120, § 676.01, effective July 27, 1972. This statute directed that the disputed property taxes be deposited in an interest-bearing escrow account and that full repayment be made to taxpayers "for whom such tax payments [were] placed in escrow" if the taxes were "ultimately held to be invalid."

Against this background, on July 28, 1972, the Bank paid under protest $38,-867.64 in personal property taxes on behalf of its shareholders. On its 1972 tax return, the Bank claimed and was allowed a deduction for these tax payments pursuant to I.R.C. § 164(e).[1]

In February, 1973, in *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973), the United States Supreme Court reversed the Illinois Supreme Court and upheld the validity of the amendment to the Illinois Constitution barring imposition of personal property taxes on property owned by individuals. Accordingly, the $38,867.64 in taxes previously paid by the Bank became refundable. The County Collector of Christian County, Illi-

nois, refunded the erroneously collected taxes in July of 1973 together with $1,173.80 in accrued interest. The refund checks were made payable jointly to the Bank and to its shareholders. Thereafter, the Bank endorsed each of the checks and forwarded them to its shareholders on August 1, 1973.

The Internal Revenue Service determined that, applying the tax benefit rule, the Bank realized income in 1973 at the time of the refund. An additional $19,219.89 in income taxes for 1973, payable with respect to the refund, was therefore assessed against it. The Bank paid this amount and brought the present suit for refund.

■ The tax benefit rule provides that "if an amount deducted from gross income in one taxable year is recovered in a later year, the recovery is income in the later year." 1 J. Mertens, Law of Federal Income Taxation, § 7.34, at 111 (1974 ed.). The rule is of judicial origin[2] but has been indirectly acknowledged and sanctioned by Congress in Section 111 of the Internal Revenue Code (26 U.S.C.), which makes specific reference to bad debts, prior taxes, and delinquency amounts.[3] This court has long held that the tax benefit rule encompasses the recovery of previously deducted taxes and that refunds of such taxes are to be treated as income in the year received. *Union Trust v. Commissioner,* 111 F.2d 60 (7th Cir. 1940), *cert. denied,* 311 U.S. 658, 61

---

1. The payments did not trigger either deductions from, or inclusions into, gross income of the shareholders. Treasury Regulations on Income Tax § 1.164–7 (26 C.F.R.).

2. *See,* e. g., *Block v. Commissioner,* 39 B.T.A. 338 (1939), *aff'd sub nom. Union Trust Co. of Indianapolis v. Commissioner,* 111 F.2d 60 (7th Cir. 1940), *cert. denied,* 311 U.S. 658, 61 S.Ct. 12, 85 L.Ed. 421 (1940); *Alice Phelan Sullivan Corp. v. United States,* 381 F.2d 399, 402–3, 180 Ct.Cl. 659 (1967).

3. I.R.C. § 111 provides in pertinent part:
"(a) General rule.—Gross income does not include income attributable to the recovery during the taxable year of a bad debt, prior tax, or delinquency amount, to the extent of the amount of the recovery exclusion with respect to such debt, tax, or amount.
"(b) Definitions.—For purposes of subsection (a)—
\* \* \* \* \* \*

"(4) Recovery exclusion.—The term 'recovery exclusion', with respect to a bad debt, prior tax, or delinquency amount, means the amount, determined in accordance with regulations prescribed by the Secretary or his delegate, of the deductions or credits allowed, on account of such bad debt, prior tax, or delinquency amount, which did not result in a reduction of the taxpayer's tax under this subtitle . . . reduced by the amount excludable in previous taxable years with respect to such debt, tax, or amount under this section."
The statutory rule has been broadened by the Treasury Regulations on Income Tax to include recovery of "all other losses, expenditures, and accruals made the basis of deductions from gross income for prior taxable years. . . ." Treas.Reg. § 1.111–1(a).

S.Ct. 12, 85 L.Ed. 421 (1940); *Universal, Inc. v. Commissioner,* 109 F.2d 616 (7th Cir. 1940); *Nash v. Commissioner,* 88 F.2d 477 (7th Cir. 1937), *cert. denied,* 301 U.S. 700, 57 S.Ct. 930, 81 L.Ed. 1355 (1937). *See also Rothensies v. Electric Battery Co.,* 329 U.S. 296, 298, 67 S.Ct. 271, 91 L.Ed. 296 (1946).

The Bank concedes that it benefited from the deduction taken in 1972. But it argues that the refunds do not constitute taxable income because it neither received them nor was legally entitled to them, citing *Lincoln National Bank v. Cullerton,* 18 Ill.App.3d 953, 958–59, 310 N.E.2d 845, 849 (1974). In *Lincoln National Bank,* the Illinois Appellate Court held that the refunds of personal property taxes (on corporate bank shares) made necessary by the United States Supreme Court's decision in *Lehnhausen v. Lake Shore Auto Parts Co., supra,* and Ill. Rev.Stat. ch. 120, § 676.01 belonged to the individual shareholders and not to the banks, regardless of who had actually paid the taxes. Because the Bank was, therefore, obligated to endorse the refund checks over to its stockholders, it contends that it was not the recipient (and beneficiary) of the refunds and thus did not "recover" the deducted taxes. In short, the Bank claims it served merely as a conduit for the transmittal of the refunds to its shareholders without having realized a "recovery" within the meaning of the tax benefit rule.

The Bank's construction of the tax benefit rule is too narrow. As the United States Board of Tax Appeals observed more than 40 years ago in a decision affirmed by this court:

> The question of whether recoveries of amounts previously deducted from income are to be taken into income of the year of recovery is not a new one. . .
>
> Income tax liability must be determined for annual periods on the basis of facts as they existed in each period. *When recovery or some other event which is inconsistent with what has been done in the past occurs,* adjustment must be made in reporting income for the year in which the change occurs. No other system would be practical in view of the statute of limitations, the obvious administrative difficulties involved, and the lack of finality in income tax liability, which would result. [emphasis supplied].

*Block v. Commissioner,* 39 B.T.A. 338 (1939), *aff'd sub nom. Union Trust Co. of Indianapolis v. Commissioner,* 111 F.2d 60 (7th Cir. 1940).

The "inconsistent event" principle enunciated in *Block* was recently reaffirmed by the Sixth Circuit in *Tennessee-Carolina Transportation, Inc. v. Commissioner,* 582 F.2d 378 (6th Cir. 1978), *cert. denied,* 440 U.S. 909, 99 S.Ct. 1219, 59 L.Ed.2d 457 (1979). *Tennessee-Carolina Transportation* involved the purchase by one motor freight company of all of the capital stock of a second such company, Service Lines, Inc. Prior to this acquisition, Service Lines had purchased for its own use certain truck tires and tubes, the expected useful life of which was approximately one year. Service Lines properly deducted the full cost of the tires and tubes as an expense when purchased. But although fully expensed, the tires and tubes were still of substantial value at the time of the stock acquisition. Two months after the acquisition, when Service Lines was liquidated and merged into its new parent, the parent, pursuant to I.R.C. § 334(b)(2), claimed a basis in the tires and tubes, stepped up to reflect their fair market value.

The Sixth Circuit held that Service Lines had to include as income the value of the tires and tubes which it distributed in liquidation. Rejecting the argument that the tax benefit rule could not be invoked because Service Lines had not actually "recovered" the tubes or tires or directly received anything in exchange for them, the court concluded that the inconsistency between the earlier deduction and the later distribution of valuable assets was sufficient to trigger application of the rule. It reasoned:

> [T]here need not be an actual physical "recovery" of some tangible asset or sum in order to apply the tax benefit rule. The tax benefit rule should be applied flexibly in order to counteract the inflexibility of the annual accounting concept which is necessary for administration of the tax laws. The rule should apply whenever there is an actual recovery of a

previously deducted amount *or* when there is some other event inconsistent with that prior deduction. *See Block v. Commissioner*, 39 B.T.A. 338, 340–41 (1939), *aff'd sub nom. Union Trust Co. v. Commissioner*, 111 F.2d 60 (7th Cir.), *cert. den.* 311 U.S. 658, 61 S.Ct. 12, 85 L.Ed. 421 (1940). Here the transfer to taxpayer with a stepped-up basis, pursuant to § 334(b)(2), of the tires and tubes which had a substantial useful life remaining was inconsistent with the prior expensing of them, which indicated they had been or would be totally used up by Service. This inconsistency is enough to invoke the tax benefit rule. [emphasis in original]. *Tennessee-Carolina Transportation, supra* at 382.

■ We agree with the Sixth Circuit that the occurrence of an event inconsistent with a prior deduction is, in appropriate circumstances,[4] sufficient to invoke the tax benefit rule. The inconsistency in the case before us is manifest. To allow the Bank a deduction for personal property taxes paid without subjecting it to income tax when its payment is refunded is to produce precisely the sort of windfall which the tax benefit rule is designed to preclude.[5]

Moreover, even if an actual "recovery" by the Bank is viewed as essential to the application of the rule, we find such a recovery here. The Bank admittedly "received" the refunded taxes, in checks payable jointly to it and its stockholders. Although state law presumably precluded retention of the re-

fund by the Bank, the relevant cases indicate that a "recovery" is not vitiated by a requirement that it ultimately be distributed by the taxpayer. For example, the Court of Claims held in *Anders v. United States*, 462 F.2d 1147, 199 Ct.Cl. 1 (1972), *cert. denied*, 409 U.S. 1064, 93 S.Ct. 557, 34 L.Ed.2d 517 (1972), that the tax benefit rule required a corporation to recognize income when it sold expensed items pursuant to a plan of liquidation, even though the plan required that the sales proceeds be turned over to the shareholders of the corporation. *Accord, Commissioner v. Anders*, 414 F.2d 1283, 1288 (10th Cir. 1969), *cert. denied*, 396 U.S. 958, 90 S.Ct. 431, 24 L.Ed.2d 423 (1969); *West Seattle National Bank of Seattle v. Commissioner*, 288 F.2d 47, 49–50 (9th Cir. 1961); *Spitalny v. United States*, 430 F.2d 195, 197–98 (9th Cir. 1970); *Connery v. United States*, 460 F.2d 1130, 1133 (3rd Cir. 1972). Similarly, the court in *Tennessee-Carolina Transportation, supra*, (after holding that an actual recovery was not a condition precedent to invocation of the tax benefit rule), held in the alternative that the taxpayer there made a "recovery" within the meaning of the rule at the time it distributed its previously expensed tires and tubes to its stockholders in liquidation. Certainly, the recovery in the instant case was considerably more palpable than the "deemed" recovery made by the subsidiary at the moment of liquidation in *Tennessee-Carolina Transportation*.

Finally, the Bank argues that, because its shareholders were fully taxable on the re-

---

4. *Cf. Putoma Corp. v. Commissioner*, 601 F.2d 734 (5th Cir. 1979). *But see* opinion of Rubin, J., dissenting.

5. The Bank cites *Commissioner v. South Lake Farms, Inc.*, 324 F.2d 837 (9th Cir. 1963), as contrary to the Sixth Circuit's holding in *Tennessee-Carolina Transportation*. In *South Lake Farms*, the Ninth Circuit held that Section 446(b) of the Internal Revenue Code did not require a corporation, upon liquidation, to recognize as income the value of certain unharvested crops for which various growing expenses (e. g. land preparation and planting costs) had previously been incurred and deducted. Although the Ninth Circuit adverts in its opinion to the tax benefit rule, the applicability of the rule had not been raised below and was arguably not properly before the court.

*See Munster v. Commissioner*, 63 T.C. 663, 677 (1975). To the extent that *South Lake Farms* does indicate that the tax benefit rule requires an actual physical recovery, it seems to conflict with the Ninth Circuit's later decision in *Home Savings & Loan Ass'n v. United States*, 514 F.2d 1199 (9th Cir. 1975). *But see Home Savings & Loan Ass'n, supra,* at 1201, n.1. *South Lake Farms* has also been criticized as bestowing "unintended benefits" upon taxpayers coming within its reach. Lyon and Eustice, *Assignment of Income: Fruit and Tree as Irrigated by the P.G. Lake Case*, 17 Tax.L.Rev. 295, 414 (1962).

If there is in fact a disagreement between the Sixth and Ninth Circuits, we think the Sixth Circuit's construction of the tax benefit rule is the better interpretation, and we follow it here.

funds eventually distributed to them, there was no loss of revenue to the government. But, of course, the distributed refunds were corporate dividends, taxable to the stockholders when received, but, nevertheless, nondeductible expenses to the Bank under our familiar system of "double taxation" at both the corporation and shareholder level. I.R.C. §§ 316, 301. Thus, unless the deduction previously taken is reversed (by taxing the amount of the refund), the Bank will, in effect, have benefited from a deduction taken for a nondeductible distribution. We cannot countenance such an anomalous result. As the district court remarked "having accepted the benefit of the tax deduction, the Bank must now accept the consequence of taxation on the subsequent refund." This bedrock principle is entirely sound.

Accordingly, the judgment below is

AFFIRMED.