**HILLSBORO NATIONAL BANK, Petitioner,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 80–1480.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 6, 1980.

Decided Feb. 25, 1981.

Rehearing and Rehearing En Banc Denied June 9, 1981.

---

Harvey B. Stephens, Springfield, Ill., for petitioner.

Jay W. Miller, Tax Division, Dept. of Justice, Washington, D. C., for respondent.

Before SWYGERT, Circuit Judge, WISDOM, Senior Circuit Judge,* and PELL, Circuit Judge.

WISDOM, Senior Circuit Judge.

The issue on this appeal is whether the petitioner, Hillsboro National Bank, realized income under the tax benefit rule when state personal property taxes it had paid on behalf of its stockholders and deducted from its income for federal income tax purposes in 1972 were refunded directly to the stockholders in 1973. We hold that the refunds were income to the Bank, and we affirm the ruling of the Tax Court.

This case concerns the remarkable recent history of the Illinois personal property tax. Before 1971, stockholders of any incorporated bank located within Illinois were subject to a personal property tax on the value of their shares. The banks were required to retain dividends sufficient to pay such taxes. Ill.Rev.Stat. ch. 120, §§ 557, 558. Rather than retaining dividends, Illinois banks customarily paid these taxes out of general funds on their stockholders' behalf. They did not receive reimbursement from the stockholders. Conceptually these tax payments on the stockholders' behalf are a form of constructive dividend. Nevertheless, the Internal Revenue Code permits the banks to deduct such payments from their corporate incomes. I.R.C. § 164(e) (1976).

Effective January 1, 1971, Illinois amended its constitution to abolish the personal property tax as to individual taxpayers. Ill. Const. art. IX–A. In July 1971, the Illinois Supreme Court struck down this amendment as a violation of the equal protection clause of the fourteenth amendment and reinstated the tax on all taxpayers. *Lake Shore Auto Parts Co. v. Korzen*, 49 Ill.2d 137, 273 N.E.2d 592 (1971). The United States Supreme Court granted certiorari in the case. Faced with this unsettled situation, the Illinois legislature passed an interim measure directing that the taxes in dispute should be paid into an interest-bearing escrow account. If the abolition of the tax was ultimately upheld, the taxes thus paid would be refunded to the taxpayers. Ill. Rev.Stat. ch. 120, § 676.01. Accordingly, on July 7, 1972, Hillsboro National Bank paid $26,110.32 in satisfaction of the 1971 personal property tax owed by the Bank's individual stockholders on their Hillsboro shares. The bank deducted this amount on its 1972 federal income tax return under I.R.C. § 164(e).

In February 1973 the United States Supreme Court reversed the Illinois court's decision and held that the abolition of the tax is constitutional. *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973). Accordingly, the County Treasurer of Montgomery County refunded the money the Bank had erroneously paid, plus interest. The Treasurer issued the refund checks directly to the Bank's stockholders, payable only to them. The Bank was neither consulted by the Treasurer nor informed of his action.

The Bank did not report any part of the 1973 refund as income. The Commissioner issued a notice of deficiency, alleging that the Bank should have reported the refund as income on its 1973 federal income tax return. The Bank petitioned the U.S. Tax Court for relief. Deciding the case on stipulations and briefs, the Tax Court entered judgment for the Commissioner.

---

* Honorable John Minor Wisdom, Senior Circuit Judge for the United States Court of Appeals for the Fifth Circuit, sitting by designation.

We conclude that this case is squarely controlled by our decision in *First Trust & Savings Bank v. United States*, 614 F.2d 1142 (7th Cir. 1980). *First Trust* arose out of the same confusion over the Illinois personal property tax as this case. There, as here, the plaintiff bank paid the tax on behalf of its individual stockholders in 1972, and the state refunded the tax to the stockholders in 1973. We held that the tax benefit rule[1] required First Trust to report the refund as 1973 income, even though the bank itself did not pocket a penny of it.

*First Trust* and this case are identical on their facts, except for one detail:[2] In *First Trust* the state refund checks named the bank as joint payee with its stockholders, while here the refund checks were made payable to the stockholders alone. This difference had no effect on the parties' substantive entitlements to the funds, for the bank in *First Trust* was obligated to pay the refunds over to the stockholders, *Lincoln National Bank v. Cullerton*, 18 Ill. App.3d 953, 958–59, 310 N.E.2d 845, 849 (1974). Despite the purely formal character of the difference, the Bank contends that it distinguishes this case from *First Trust*. The tax benefit rule applied in *First Trust*, the Bank argues, because the taxpayer bank there, as joint payee, made an "actual recovery" of the previously deducted state tax.

This argument gives too narrow a reading to our construction of the tax benefit rule in *First Trust*. We held unambiguously that the rule applies in any case where there is *either* an actual recovery of a previously deducted amount *or* some other event inconsistent with that prior deduction. 614 F.2d at 1145–46 & n.5; *accord, Tennessee-Carolina Transportation, Inc. v. Commissioner*, 582 F.2d 378 (6th Cir. 1978), *cert. denied*, 440 U.S. 909, 99 S.Ct. 1219, 59 L.Ed.2d 457 (1979); *see Block v. Commissioner*, 39 B.T.A. 338 (1939), *aff'd sub nom. Union Trust Co. v. Commissioner*, 111 F.2d 60 (7th Cir.), *cert. denied*, 311 U.S. 658, 61 S.Ct. 12, 85 L.Ed. 421 (1940). Hence, the taxpayer bank in *First Trust* was held liable on either of two alternative grounds: first, that the bank actually recovered the state refund as joint payee; and second, that the refund was a later event patently inconsistent with the deduction taken under § 164(e). 614 F.2d at 1146.

Clearly, the latter of these two grounds applies foursquare in this case. Illinois, by refunding the state property tax to the stockholders, transformed a tax payment deductible under § 164(e) into a nondeductible cash dividend to the Bank's stockholders. Contrary to the Bank's contention, the tax benefit rule does not hinge upon whether the taxpayer "participates" in the later inconsistent event. The point is that the taxpayer has gained a windfall by taking a deduction that later developments show to have been unjustified.

AFFIRMED.

PELL, Circuit Judge, dissenting.

Essentially, the majority members of the panel in this case, without any real analysis

---

1. The tax benefit rule provides that when a taxpayer decreases his tax liability by taking a deduction proper at the time, but a new event in a later year undercuts the factual basis for the deduction (as, for example, when the taxpayer recovers a previously deducted loss or expense), the taxpayer must report the proceeds of the later transaction as income in the later year—even if the later transaction would not have created taxable income if it had occurred in the earlier year. In effect, the taxpayer is making up for an unwarranted deduction taken in Year One by adding to his reported income in Year Two. *See generally Block v. Comm'r*, 39 B.T.A. 338 (1939), *aff'd sub nom. Union Trust Co. v. Comm'r*, 111 F.2d 60 (7th Cir.), *cert. denied*, 311 U.S. 658, 61 S.Ct. 12, 85 L.Ed. 421 (1940); *Alice Phelon Sullivan Corp.*

*v. United States*, 381 F.2d 399, 402–03 (Ct.Cl. 1967); 1 J. Mertens, Law of Federal Income Taxation § 7.34, at 111 (rev. ed. 1974). Congress has indirectly acknowledged and sanctioned the rule. I.R.C. § 111 (1976).

2. There is one other difference between the cases. In *First Trust* the plaintiff bank paid the disputed federal income tax on the refunded state taxes and then sued in district court for a federal refund; in this case the Bank has not paid the federal tax because it appealed the Commission's notice of deficiency to the Tax Court. The parties concede that this procedural difference is entirely immaterial to the issues in this case.

of the merits, feel themselves bound by this court's opinion in *First Trust & Savings Bank v. United States,* 614 F.2d 1142 (7th Cir. 1980). Ordinarily, even though I regard *First Trust* as having been incorrectly decided, I would likewise feel bound by a prior applicable opinion of this court, particularly one as recent as *First Trust.* Because, however, I regard that case as distinguishable, I respectfully dissent.

Both in *First Trust,* 614 F.2d at 1146, and in the majority opinion in the present case, there is a reference to the taxpayer bank having secured a "windfall." This just is not so. The taxpayer did, of course, take the deduction to which it was entitled by the revenue code.[1] While it got the benefit in the year the tax was paid this was nothing more than the ordinary situation in which a taxpayer is permitted a deduction for a state tax it has paid. That tax, however, was imposed not on the bank but was a tax on the individual shareholders of the bank. State statutes, such as the Illinois statute here involved,[2] made the bank liable for the tax on the shareholders' shares if the shareholders didn't pay the tax. Because of the obvious exposure resulting from some shareholders not getting around to paying a traditionally unpopular tax on intangible personal property, the banks, at least, from the early part of this century, have voluntarily paid all the tax owing by all of their shareholders. Yet, even though the tax would have been deductible if it had been paid directly by the shareholders whose obligation it was, no deduction was permitted by anyone until the enactment of the Revenue Act of 1921. As the Supreme Court pointed out in *Wisconsin Gas & Electric Co. v. United States,* 322 U.S. 526, 531, 64 S.Ct. 1106, 1109, 88 L.Ed. 1434 (1944):

> The origins of the present § 23(d) in the Revenue Act of 1921 [now 26 U.S.C. § 164(d)] disclose that its adoption was prompted by the plight of various banking corporations which paid and voluntarily absorbed the burden of certain local taxes imposed upon their shareholders, but were not permitted to deduct those payments from gross income.

*Wisconsin Gas* in the marginal note supporting the above quotation refers to the Hearings before the Committee on Finance on H.R. 8245, U.S. Senate, 67th Cong., 1st Sess., 250–51. Turning to that legislative history we find the following:

> Dr. Adams. [Dr. T.S. Adams, Tax Adviser, Treasury Department] Now, Senator Smoot, reverting to your proposition, the Bankers' Association are asking that they be allowed to claim deduction for State and local property taxes which they pay. The banks pay these taxes for and on behalf of their stockholders. The taxes, you will remember, are on the stockholders. The bank voluntarily assumes it and pays it. The Banks now want to claim a deduction for it. They do it almost universally.

> Senator Smoot. If it were the stockholder it would be allowed, but as long as the bank takes it out, they do not allow it.

---

1. 26 U.S.C. § 164(e) provides as follows:

   Where a corporation pays a tax imposed on a shareholder on his interest as a shareholder, and where the shareholder does not reimburse the corporation, then—
   (1) the deduction allowed by subsection (a) shall be allowed to the corporation; and
   (2) no deduction shall be allowed the shareholder for such tax.

2. Illinois Revised Statutes, 1971, 120 § 558, provides in pertinent part as follows:

   For the purpose of collecting such taxes, it shall be the duty of every such bank, or the managing officer or officers thereof, to retain so much of any dividend or dividends belonging to such stockholders as shall be necessary to pay any taxes levied upon their shares of stock, respectively, until it shall be made to appear to such bank or its officers that such taxes have been paid; and any officer of any such bank who shall pay over or authorize the paying over of any such dividend or dividends, or any portion thereof, contrary to the provisions of this section, shall thereby become liable for such tax; and if the said tax shall not be paid, the collector of taxes where said bank is located shall sell said share or shares to pay the same, like other personal property. And in case of sale the provision of law in regard to the transfer of stock when sold on execution, shall apply to such sale.

Dr. Adams. They pay it voluntarily. A pays B's taxes voluntarily. The banks pay it voluntarily.

(Informal discussion followed.)

Dr. Adams. Banks may be given a deduction because, as a matter of strict legal theory, it is imposed on the stockholders and the stockholders do not take it. This is what worries me. The Revised Statutes provide the manner in which the banks shall take. The Federal statute provides this, that the States may tax the real estate of national banks as other real estate is taxed; and that, in addition, the value of the shares of the national banks may be included in the personal property of the shareholders. That is only taxed at the place where the bank is located. The consequence is that a habit has grown up of assessing the shareholders of the national banks and asking them to pay it.

\* \* \* \* \* \*

Senator Smoot. I have been a director in a bank out in Salt Lake City for over 20 years. They have paid that tax ever since I have owned a share of stock in the bank. I have never taken a single cent deduction in any way. I am president of a bank, too, and they pay every single cent of that tax. I know nothing about it. I do not take 1 cent of credit for deductions, and the banks are entitled to it. They pay it out.

This achieved an essentially fair situation, one which we like to think of as a hallmark of our system of voluntary taxation. In other words, the tax was paid and one, but only one, deduction was allowed. Unfairness did not rear its head until the Illinois personal property tax on individuals was abolished and a refund was made. If this refund had been made to the bank which had *voluntarily*[3] paid the taxes, then under normal procedures of the tax benefit rule, the refund would have been taxable to the bank. The Appellate Court of Illinois, however, decreed otherwise as to the identity of the recipient of the refund, holding that it was the shareholder upon whom the tax had been imposed who was entitled to the refund. *Lincoln National Bank v. Cullerton*, 18 Ill.App.3d 953, 310 N.E.2d 845 (1974). We now then have arrived at the situation presented by the present case. The bank receives not one penny of the refund and is not entitled to do so but it pays an income tax nevertheless. The shareholder who receives the refund must also include it in his taxable income. This is double taxation, purely and simply.

At the same hearing of the Committee on Finance quoted from above, an amendment of a different part of the code was considered which throws light on the then position of the Treasury in an analogous situation:

Dr. Adams. . . . The next change occurs in lines 24 and 25, at the bottom of page 76. "Nor shall such tax be included in the gross income of the obligee."

That is a difficult point that has caused almost more trouble than anything in the law. The point is this: In the tax-free covenant bond the corporation pays the tax for the bondholder, or 2 per cent of it. Now, while the debtor corporation is paying 2 per cent for the bondholder and he is really paying that much tax for himself, still strict theory requires that the bondholder put that in his return as his income. We want to clear that up so that that particular interest shall not be included in the gross income of the obligee.

Similarly, as far as I can ascertain, the IRS has not attempted to collect taxes from the shareholders for the payment by the banks of the local taxes; yet now, through a fortuitous circumstance of the tax refund, the endeavor is launched to collect twice on the same sum, an endeavor which is now for the second time approved by this court.[4]

---

**3.** Under the circumstances of the voluntariness, it seems appropriate to italicize the word.

**4.** Although the case of the shareholder taxpayers is not before this court, it was conceded during oral argument that the shareholders would have to include the refunds in taxable income.

To put the matter in perspective, we can assume two parallel situations in substance but not in form with the resultant taxation dependent upon the form and not the substance.[5]

|  | Bank A | Bank B |
|---|---|---|
| 1972 | Shareholders pay their own Personal property tax. Shareholders who itemize deductions, take the deductions. The bank takes no deduction. No income tax paid. | The bank pays the personal property tax of the shareholders. The bank takes the deduction. The shareholders take no deduction. No income tax paid. |
| 1973 | Shareholders receive a refund. Bank receives no part of the refund. Shareholder includes amount of refund in taxable income. Bank has no taxable consequences. | Shareholders receive a refund. Bank receives no part of the refund. Shareholder includes amount of refund in taxable income. Bank also includes amount of refund in taxable income. |

There remains only the matter of *First Trust*. I would be less than candid if I did not say that I think this panel should circulate an opinion to all of the active judges of the court pursuant to Circuit Rule 16(e), asking for approval of the overruling of *First Trust*. However, it is on its facts sufficiently distinguishable so that we do not need to overrule it. In *First Trust*, the refund checks were payable jointly to the bank and the shareholders. The bank there was in a position to assert its views as to the disposition of the checks. Here, the bank had no opportunity to exercise any control over the refunds; they went directly to the shareholders. In *Lincoln National Bank*, the Illinois court pointed out that the payment of the tax by the bank reduced *pro tanto* the assets of all of the shareholders. 310 N.E.2d at 849. The payment of the income tax the following year in the present case will again achieve this effect. In addition, however, the shareholders' personal assets will also be reduced by the payment of income tax on the refund. If the bank has some say about the disposition of the refund checks, as it would if they were payable to the bank and the share-

holders jointly, it is not inconceivable that the shareholders might be interested in declining what amounts to a double dip out of their assets.

The majority opinion in the present case denies validity to the bank's argument that an "actual recovery" was made in *First Trust*, and holds that this argument gives too narrow a reading to this court's construction of the tax benefit rule in *First Trust*. As I read the opinion of this court in that case it appears to me that the court was unwilling to rest on the "windfall" aspect of the case, a situation which, as I have indicated, did not exist. Instead, the court went ahead to say:

> Moreover, even if an actual "recovery" by the Bank is viewed as essential to the application of the rule, we find such a recovery here. The Bank admittedly "received" the refunded taxes, in checks payable jointly to it and its stockholders. Although state law presumably precluded retention of the refund by the Bank, the relevant cases indicate that a "recovery" is not vitiated by a requirement that it ultimately be distributed by the taxpayer.

614 F.2d at 1146. Here, of course, there was no recovery either in fact or in law. What there is here though is what to me is a distressing situation in a country whose founding was marked by resistance to unfair taxation in which the unwarranted and unfair ingenuity of the tax collectors has now received judicial approval.

---

5. I am not unmindful that the difference between tax evasion and tax avoidance may be dependent upon form and, indeed, taxable consequences may often depend on the form of a transaction. In this case, however, even giving

controlling significance to form over substance involves a situation where the bank taxpayer did not recover that from which it had a tax benefit.